Good morning. May it please the Court, I'm James Laughlin, and I represent the appellant Peter Lam. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. The $12.6 million forfeiture judgment imposed on Mr. Lam is unconstitutionally excessive under the Eighth Amendment. The relevant statute set that forfeiture amount because it holds Mr. Lam jointly and separately liable for the activity of Henry Nguyen, who was the driver and creator of the scheme and who reaped the benefits of it. The government acts like that's the end of the inquiry, but it's not. It's only the start, because then the Eighth Amendment comes in, and the Eighth Amendment is an important constitutional limitation on these kinds of overbroad forfeiture judgments. So just so I understand your argument, you don't challenge the amount of the forfeiture per se, just as applied to your client? Correct. It's an Eighth Amendment challenge based on the totality of the circumstances, including that pertain to my client. But the amount is not at issue. The amount as set by the statute is not at issue. Yes, correct. The test is whether the forfeiture is grossly disproportional to the gravity of Mr. Lam's particular offense. And as discussed in the brief, there are several factors that come into play, but this morning I'd like to focus on two of them, the other available penalties and Mr. Lam's role in the offense. With regard to the other penalties, this Court, following the Supreme Court's decision has recognized that the fine range set by the sentencing guidelines is most significant, because they take into account a defendant's individual culpability. In this case, the guidelines, which of course take into account the full scope of the conspiracy, set the offense level at 24, which results in a fine range of $10,000 to $100,000. On appeal, the government argues for the first time that the actual high end of the range should be twice the gross loss under Section 3571D. As explained in the reply brief, however, the Second Circuit and the government itself rejected that position in United States v. Chucet. So the position is, I think, undisputable that the high end of the relevant guideline range is $100,000, which means that the forfeiture judgment is 126 times that amount. You mean the guideline fine range? The guideline fine range, correct. So the forfeiture judgment is 126 times the high end of the fine range. And I assume... That's assuming that we don't apply the general statute, which says twice the loss or twice the gain. Correct, Your Honor. As I pointed out, even the government in another case, the Second Circuit case of Chucet, recognized that the position it took in this case is not valid. Yes, it did, and citing a couple of other cases, neither of which gave very much analysis of that. They did concede it then. They aren't conceding it now, it sounds like. Well, Your Honor, let me point out why I think, irrespective of that, the twice the gross loss figure is not a very good metric for this fact. I know the guidelines say our intention is to make it twice the loss or twice the gain, and if that's not true, then, well, maybe you should deviate. Okay. Well, Your Honor, yeah, correct. It's talking about an upward departure, not the initial fine range itself. With regard to the twice the gross loss, the reason I don't think it's important with regard to this factor is because that's a separate factor. The amount of the harm is a separate Bajikagian factor, and I think that it would basically be double-counting the same factor to apply the double loss fine range when you're considering the other penalties. I think that it's more appropriate to consider that factor elsewhere and focus on what the Sentence Commission set as the generally applicable fine range for this kind of conduct. Keep in mind that this fine range comes from the offense level, which is based on the tax loss to the government, the sentencing guidelines assessment of the harm in the case. So based on the assessment of the harm, they've come to this generally applicable range of $10,000 to $100,000. And I do believe that that's a significant factor in the analysis. The other factor I'd like to talk about is Mr. Lam. And that would be the range you apply to Mr. Nguyen also. I'm sorry? That's the range you would apply to the major mover in this case also, Nguyen? Correct, Your Honor. And I think that that's a theme that kind of plays over all of these factors, which is the Court should look at all these factors and be able to differentiate between Mr. Lam and Henry Nguyen, because if you just take the joint and several liability theory that the government wants to begin and end with, they're both equally punished, because this forfeiture is punishment. They're both equally punished for doing vastly different things. And that's where I think Mr. Lam's role in the offense comes into play. There's really not a lot of dispute about what his role actually was. Henry Nguyen was a ringleader who hired easily manipulated people to further his scheme. He sought out people like Mr. Lam, who is a refugee with a sixth-grade Vietnamese education, a blue-collar job history, and needed to make a little bit more money to support his young son. But there's no question that Mr. Lam knew what he was doing. It's not as if he were duped into doing something different than he thought. Correct, Your Honor. The reason we're here is the jury found that he sold the fish knowing it had been mislabeled. Right. We do disagree with the government. I think the fact that the jury did not sign off on all of the government's conspiracy theories reflect that they rejected the government's theory of trial, that he knew about the full scope of the importing and the avoiding of duties. But he was found guilty of knowingly selling fish, knowing it had been mislabeled. So the question is, what's the appropriate punishment for that offense on top of the 41-month sentence he's already served? What additional punishment in the form of forfeiture is appropriate? And that's where this Court in Busher recognized that you have to look at the motive and intent of the individual defendant. And this is where there's a vast difference between Mr. Lam on the one hand and Henry Nguyen on the other. Counsel, why is it appropriate for us to resolve these questions on this record? We have several cases that suggest that this is the appropriate duty of the district court. Why shouldn't we send this back to the district court who saw the trial, saw all the evidence, and have the district court make all these findings in the first instance? I think that would be completely appropriate since the court did not make findings as it should have. Is it your position that we should remand this or that we should decide it ourselves on this record? I believe that it should be. I believe that the remedy is the same either way. I believe that the court on this record could find that this forfeiture is unconstitutional, which would mean it would have to remand for the court to make findings to find out what a constitutional forfeiture would be. But the court could equally say, you know, we can't tell on this record whether it's unconstitutional. The remedy is the same. Send it back to the district court to make factual findings to find out what a constitutional forfeiture would be. The only difference would be how much guidance this court would want to give to the court on remand as it analyzes the factors. But I think the end result is the same. The case should be sent back for the court to conduct the kind of inquiry it should and analyze the factors for itself to decide what the appropriate forfeiture is. I see I have just a bit over two minutes left. If I can, I'll reserve the remainder of my time for rebuttal. Certainly. Thank you. Please, the Court. Robert Lundman representing the United States. As Mr. Laughlin explained, the only issue in this case is whether the forfeiture is constitutionally excessive. And we argue that it's not. Under Bocciacaggian, the key test here, the key component is, is it grossly disproportional to the gravity of the defendant's offense? And we think if you look at all the factors here and all the record, that the answer is no, it's not grossly disproportional. Starting first with the nature and extent of the crime, which is one of the factors this Court has mentioned and was mentioned in Bocciacaggian, as the district court explained during the first sentencing here, Mr. Lamb knew exactly what he was doing. He knew that the fish had been mislabeled. He knew that the duty was being avoided, and then he sold the fish. And unlike Bocciacaggian, which was a one-time incident, a failure to report, Mr. Lamb did this for nine months. And that puts this case in a very different light when the defendant is over and over again violating this statutory prohibition. Counsel, what is our standard of review? You review any fact-finding for clear error, and then you review the legal issue of de novo. And Ms. Gordon-Ferro explained that recently. Yeah. The difficulty I'm having with this case, as Judge Biby noted, is that the district court didn't make any findings regarding this issue. So how should we review that if the district court didn't make any findings at all regarding this issue? Right. Well, I think this court, I think the issue has been fully briefed here. There's no factual development that Mr. Lamb has noted that needs to be done. The issue was presented to the district court, and the district court entered the full forfeiture amount. But the district court didn't discuss this issue at all. That's right. In the first sentencing, there was argument on the issue in front of the district court judge, and he asked some questions, then entered the full forfeiture amount. After this court remanded, there was some further motions practiced, and he entered the full forfeiture amount. But you're right. The district court judge didn't issue an opinion that analyzes this and did not discuss the factors that control it. We have a couple of opinions that are really quite clear on this, Busher and Littlefield, that suggest that where a district court fails to do that, the proper remedy is to send it back to the district court. I think Busher and Littlefield, there's a factual underpinning to the issue. In Busher, this court told the district court, you need to go and parse out what part of the enterprise is tainted by the RICO violations and which part are not. And we don't know the answer to that. You, district court, figure out which part of the RICO enterprise should be forfeited or if the whole amount. And Littlefield, the issue was, well, it's the whole piece of property. Should that be forfeited because of the marijuana plants on part of the property, or should it be part of the property? And there was fact finding needed to parse out that issue as well. Here, I think we know what happened. We had a trial. We know Mr. Lamb's role. We know what the forfeiture is. I think the issue that remains to be resolved is whether it's too high, constitutionally excessive or not. But I don't think there's any fact finding that needs to be done in the district court to assess that. Two other relevant factors here, I mentioned in nature and extent of the crime, are the penalties, other penalties that might apply and the harm. I want to touch on the penalties quickly. This court, while saying the sentencing guidelines might be the best metric, has never said that the statutory maximum or statutory alternative fine amount is irrelevant. And this is the exact sort of crime where the statutory alternative amount set forth in 3571D is particularly relevant because what happened here is a conspiracy with Mr. Lamb selling millions of dollars of fish that deprived the government of the anti-dumping tax revenue. And that was a $6.19 million loss for the government. So that's exactly the kind of case where the sentencing guidelines in Application Note 4 says, you should look to the double the loss as a relevant factor here. And either consider that in setting the fine amount or upwardly depart from the range if necessary. Counsel, what's your response to opposing counsel's argument that because the jury did not indicate that Mr. Lamb was a full-fledged conspirator in terms of the duties, that he should not be held accountable for the full range of the tax duties that were dodged? Well, there's a two-part response to that. First, if you read the special verdict from the jury here, it found that Mr. Lamb was guilty of two of the objectives of the conspiracy. And both of those objectives, Objectives 3 and 5, and this is in the sealed excerpts of record, Pages 1 to 4, both of those objectives make clear that Mr. Lamb knew about the duty. It's not just that he was selling fish, but that he was selling fish that had been illegally imported with knowledge of that. And so that puts Mr. Lamb on the hook, based on what the jury found, for all of his criminal conduct here. Everything we've charged him with. The second point is – I may have lost the second point in going through the first one. I think the second point is when you look at the offense here set forth in Section 545, so we're backing up from the conspiracy objectives to the actual statute, the statute sets forth two separate offenses. One is illegal importation, and two is selling those illegally imported goods with knowledge that they were illegally imported. So I think both Section 545 makes it very clear that Mr. Lamb fits squarely in the definition of the criminal prohibition that's at issue here. That makes this case a little unlike Bajikadzian, where the Supreme Court said, well, Bajikadzian's really about the reporting your money that you're taking out of the country is really aimed at preventing some other crimes. And so he was not kind of in the key heartland of the criminal prohibition. While Mr. Lamb falls right under Section 545. You have importation, and then you have selling the goods that were illegally imported. So I think both of those make clear that the jury found that Mr. Lamb had an important role in the conspiracy. Was there a charge of evading the tax liabilities? Was that part of the indictment as well? It was part of the indictment, but not aimed at Mr. Lamb. The government's theory in this case was never that Mr. Lamb was the person in charge of importing the fish. He was charged with selling the illegally imported fish with knowledge that it had been illegally imported. That's the government's case. And with knowledge that taxes that were owed were not paid. Was that part of the charge as well? I think it's the – I'd have to check the indictment and the special verdict. I can't remember if it goes as far as saying that there were duties that were unpaid. The testimony of his cousin, John Lay, which we cite to in our brief, made clear that in his job before, his job in the conspiracy, that he knew that these anti-dumping duties had been enacted. He was selling the same sort of fish in that job. Those duties had a big impact on the job. They made the fish, the price they were paying, much more expensive. They were coming through the duty process. And so he was aware of the duties. And the evidence at trial shows that when his customers asked him, why are these – why are these fish mislabeled? Why does it say conger pike or sole on the label instead of bassa when you're telling me you're selling me bassa? He offered a wide variety of reasons why that was the case. None of them – none of them hold up. Different scientific name, mislabeling at the factory. It's all – but the promise he made to them was it's all really bassa. They're just labeled incorrectly. If you couple that together, he knew about the duties. He's offering a wide range of explanations for why they're mislabeled. And you end up with nine months of him selling the product and violating the statute. The final point I want to touch on is the harm here. The government's loss, it's undisputed, was $6.19 million. That's a significant amount of money. In addition, there's two unquantifiable losses, harm to the domestic catfish industry and harm to the importers, one of whom testified in the case, that were playing by the rules and were undercut by the – by the prices that the conspiracy was charging. So unless the court has any further questions, I'll just refer to my brief. All right. Thank you, counsel. Thank you. It appears not. Roboto. First, with regard to the court's questions about the jury verdict, I just do want to highlight, I think that the government's account wasn't accurate. I would point to, again, the special verdict on Pages 1 through 4 of the sealed excerpts. And for the conspiracy, one of the theories that the court rejected – I'm sorry, the jury rejected was that Mr. Lam acted knowing the effect of an entry of goods that is Vietnamese catfish by the payment of less than the amount of legal duty owed. So the jury did not accept the government's theory that he knew that these fish had been mislabeled to avoid the payment of duties. By the same token, for the underlying substantive offenses, it was given two options of a violation of law that would amount to the 545 violation. The one it rejected was that Mr. Lam knew about the law pertaining to the entry of merchandise by the payment of less than the duty legally due. So I believe that that clarifies what the verdict was. The second thing I'd like to point out about the government's argument is, if everything the government says is true, what it really is saying is that when it comes to the forfeiture punishment, Henry Nguyen and Peter Lam deserve exactly the same punishment. Under their theory, there's no reason to differentiate the two,  And finally, I'd just like to stress what I said before, which is that I do believe that a remand in this case is appropriate. I believe that all these factors are very fact-dependent. Contrary to what the government suggests, it's not something this court can do for itself on the existing record. It can certainly look at it and say that this is clearly unconstitutional, but it can't get into what is constitutional without sending it back to the district court to work that out. If the facts are undisputed and it's de novo review, why couldn't we do that? Well, I think that certainly the facts in the record are undisputed to the point where it establishes that the current order is unconstitutional. Where the constitutional forfeiture might lie would require additional factual inquiry that this court can't do in the first instance. And so, as I said, either way, the remedy is the same. Whether the court thinks that it's unconstitutional and it needs to figure out what is, or it just can't figure it out and it needs to figure out whether it is, the remedy is the same to go back to the district court and let that court pass on it in the first instance. So from your perspective, what additional facts would need to be garnered before a finding of constitutionality could ensue? I think that what would be required is for the district court to look at these factors. To the extent there is differences of opinion between the two of us, as opposed to Mr. Lamb's role, as opposed to whether or not the harm is adequately encapsulates his level of culpability, those are things that the district court would have to work out. Because as the government said, the district court sat through the trial. It sat through two sentencings. And so when it comes down to parsing those differences that do remain, that's what the court has to figure out. I don't know whether or not there would be an evidentiary hearing where new facts would be developed, but the court has to make findings on these particular factors based on the facts that it did have before, and it just hasn't done that. Thank you, counsel. Thank you very much. Thank you to both counsel. The case is submitted for decision by the court.
judges: Fernandez, Rawlinson, Bybee